# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 1, 2012

## STATE OF TENNESSEE v. DEVONTE BLACK

**Direct Appeal from the Criminal Court for Shelby County**
**No. W11-00427     W. Mark Ward, Judge**

_____

**No. W2011-01731-CCA-R3-CD  - Filed July 9, 2012**

_____

The Defendant, Devonte Black, pled guilty to aggravated burglary, a Class C felony. The trial court sentenced the Defendant to one year of incarceration followed by three years on probation after release from confinement. On appeal, the Defendant contends that the trial court erred when it imposed a sentence of split confinement, specifically when it: (1) denied full probation; and (2) denied judicial diversion. After a thorough review of the record and relevant authorities, we conclude the trial court properly sentenced the Defendant. Accordingly, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Phyllis Aluko (on appeal) and Constance Barnes (at trial), Memphis, Tennessee, for the appellant, Devonte Black.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia Lee, Senior Counsel; Amy P. Weirich, District Attorney General, and Betsy Wiseman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

In March 2011, the police charged the Defendant with aggravated burglary. In July 2011, the Defendant waived his right to an indictment and proceeded to the disposition of the aggravated burglary charge pursuant to the criminal information process. On July 28,

2011, after his arraignment, the Defendant pled guilty to aggravated burglary and agreed to allow the trial court to determine the manner and length of his sentence. During the guilty plea submission hearing, the State gave the following summary of the factual basis for the Defendant's plea:

> Had these matters gone to trial[,] the [S]tate would have alleged proof that on March 16th, 2011, officers responded to a burglary call at 7628 Richwood. At 12:03 . . . in the afternoon, . . . Martha Hearne advised she heard a noise, she was in her bathroom. She emerged from her bedroom to see two male blacks in her living room attempting to disconnect her TV. When they saw her[,] they fled from the residence.

> They had broken out a rear window in the kitchen. Officers did observe the shattered window and a disconnected TV. They saw one suspect fleeing through a backyard at another residence and took him into custody. [The Defendant] was found ten minutes later hiding in a backyard of a nearby home. A Samsung remote control was found on him at the time of his arrest . . . . There were also three [more] subjects that were detained that had been involved in [the burglary].

Thereafter, the trial court accepted the Defendant's guilty plea as knowing and voluntary and held a sentencing hearing. The Defendant testified that he was eighteen years old and had lived with his mother when he was a child. He, however, no longer received familial support from his mother at the time of the hearing. He testified that he lived with his girlfriend, their five-week-old baby, and his girlfriend's parents.

The Defendant testified that he and Kevin Bell burglarized the victim's house. He said that he was not staying at his mother's house at the time; rather, he lived with his "godbrother," Matthew House. The Defendant testified that House identified a residence he knew and suggested the burglary. The Defendant agreed that House did not enter the residence, but maintained that House "came up with the idea." The Defendant said that House "scoped [the house] out," told the Defendant and Bell what to do and what items to get, and gave the Defendant "the code to the house."

The Defendant testified that, prior to his arrest in this case, he had been working at Burlington Coat Factory and part-time with his mother's cleaning service. He stated that he graduated from high school, and, if granted judicial diversion, he planned to attend "culinary art school and then try to start [his] own restaurant." He also said that, if granted diversion, he would live with his girlfriend's family. The Defendant agreed that he would pay restitution to the victim. Additionally, the Defendant stated that he occasionally used

marijuana.

The Defendant testified that he has "had several encounters with juvenile court." The Defendant served two weeks in jail as a juvenile for aggravated burglary and was then placed on probation and house arrest at the Hanover House. The Defendant testified that he had "other encounters" with juvenile court, but he was "just warned and released to [his] mother." The Defendant stated that, when he was in the seventh grade, he was arrested for aggravated assault after he carried a weapon, a knife, to school. He did not serve jail time for that offense, but he was placed on probation at the Hanover House for the charge. The Defendant testified that he had not had any further contact with the juvenile court since he was in the eighth grade. The Defendant admitted that he had committed the aggravated burglary involved in this case within a few months of turning eighteen. The Defendant stated that he did not have any job prospects, but he had applied for jobs in restaurants.

On cross-examination, the Defendant acknowledged that he was arrested for the first time in seventh grade for bringing a knife to school and threatening a fellow student with it. The Defendant admitted that a teacher grabbed him before he could use the knife on the other student. The Defendant agreed that, in September of 2006, he was arrested for criminal trespass at Southland Middle School after he had been banned from that property. The Defendant further agreed that, in March of 2008, he received a juvenile summons for violation of curfew as a result of a call received by police regarding a group of male juveniles vandalizing vehicles. He further agreed that, on March 31, 2008, he was arrested for theft of property after shoplifting items from Target. The Defendant admitted that he stole several items from the store because he did not have any money. The Defendant acknowledged that, in May of 2008, he went to a residential neighborhood during school hours with a group of juveniles and stole items from a residence; he further admitted to acting as "a lookout" at another residence. Lastly, the Defendant admitted that, on April 21, 2009, he assaulted a fellow student, his girlfriend at the time, at school by repeatedly grabbing her and shoving her into a wall. The assault was captured by the school's video cameras. The Defendant acknowledged that he had "consistently committed crimes, misdemeanors, violent misdemeanors[,] and [a] felony" over the past five years. The Defendant, however, testified that he asked for probation in this case because he "changed [his] life" and would try "to be there for [his] daughter."

On redirect-examination, the Defendant testified that, of the other males involved in the aggravated burglary, he currently associated with only one of them. He stated that he "realize[d] that it's wrong to take property that doesn't belong to [him]," and it was "something that [he had since] stopped doing." The Defendant testified that, for the past sixty days, he had been out of custody and had neither been arrested nor broken into any homes.

3

Ricky Downey, the father of the Defendant's current girlfriend, testified that he had known the Defendant for the past six months because the Defendant and Downey's daughter have a child together. Downey testified that the Defendant lived with his family, and Downey had observed a change of attitude in the Defendant. He testified that the Defendant's mother had not been involved in the Defendant's life since the birth of the Defendant's baby. Downey also testified that the Defendant had been applying for jobs and that, if the Defendant received judicial diversion, Downey would help him attend the culinary arts program at Southwest Tennessee Community Center.

After considering the evidence presented at the sentencing hearing, the trial court sentenced the Defendant to an effective sentence of three years at thirty percent, specifying that the Defendant would serve one year in incarceration, and three years of probation after he served his time in prison. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it imposed a sentence of split confinement, specifically when it (1) denied full probation and (2) denied judicial diversion. The State responds that, because measures less restrictive than confinement had frequently and unsuccessfully been applied to the Defendant, the trial court correctly sentenced the Defendant and properly exercised its discretionary authority to deny full probation and judicial diversion. We agree with the State.

### 1. Denial of Full Probation

The Defendant contends that the trial court erred when it denied the Defendant full probation because it "based the denial largely on [the Defendant's] juvenile history." The State responds that the trial court properly exercised its discretionary authority in its denial of full probation to the Defendant.

When a defendant challenges the length, range or manner of service of a sentence, this Court must conduct a *de novo* review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2010). As the Sentencing Commission Comments to this section note, the burden is on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401 (2010), Sentencing Comm'n Cmts. This means that, if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration to the factors and principles relevant to sentencing under the 1989 Sentencing Act, Tennessee Code Annotated section 40-35-103, we may not disturb the

sentence even if a different result was preferred. *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008); *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

In conducting a *de novo* review of a sentence, we must consider: (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing, (4) the arguments of counsel relative to sentencing alternatives, (5) the nature and characteristics of the offense, (6) any mitigating or enhancement factors, (7) any statements made by the defendant on his or her own behalf and (8) the defendant's potential or lack of potential for rehabilitation or treatment. *See* T.C.A. § 40-35-210 (2010); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

To meet the burden of establishing suitability for full probation a defendant must demonstrate that full probation will subserve the ends of justice and the best interests of both the public and the defendant. *State v. Blackhurst*, 70 S.W.3d 88, 97 (Tenn. 2001). The following criteria, while not controlling the discretion of the sentencing court, shall be accorded weight when deciding the defendant's suitability for full probation: (1) the nature and circumstances of the criminal conduct involved; (2) the defendant's potential or lack of potential for rehabilitation; (3) whether a sentence of full probation would unduly depreciate the seriousness of the offense; and (4) whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes. T.C.A. §§ 40-35-103(1)(B), -103(5), -210(b)(4) (2010); *see also Blackhurst*, 70 S.W.3d at 97.

In the case under submission, the Defendant is eligible for full probation because his sentence is ten years or less (subject to certain statutory exclusions not relevant here). T.C.A. § 40-35-303(a) (2010). Although full probation must be automatically considered by the trial court as a sentencing alternative whenever the defendant is eligible, "the defendant is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303(b) (2009), Sentencing Comm'n Cmts.

In this case, the trial court sentenced the Defendant to an effective sentence of three years at thirty percent, specifying that the Defendant serve one year in incarceration, and three years of probation after he served his time in prison. In making that determination, the trial court stated that it considered the evidence presented at the sentencing hearing, the presentence report, the sentencing principles, the nature and characteristics of the criminal conduct involved, enhancement and mitigation factors, information regarding sentencing practices for similar offenses in the State, and statements made by the Defendant on his own

behalf. After reviewing the criteria for alternative sentencing, the trial court stated that the Defendant had no prior adult record because he was eighteen at the time of the hearing and had committed the offense involved in this case, aggravated burglary, within a few months of turning eighteen. The trial court stated that it had to consider the Defendant's "quite extensive juvenile record," which included "a prior aggravated burglary" and "at least one, two, three, four, five, six, seven, eight contacts with the juvenile court system." The trial court noted that, "in all eight contacts[,] measures less restrictive than confinement" were applied to "help this young man . . . to no avail." The trial court concluded that "measures less restrictive than confinement have been unsuccessfully applied to [the Defendant]," and, as a result, the trial court "den[ied] any form of alternative sentencing in this matter." *See* T.C.A. § 40-35-103(1)(C) (2010) ("Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant"); *State v. Hooper*, 29 S.W.3d 1, 5 (Tenn. 2000); *State v. Ashby*, 823 S.W.2d 166, 170 (Tenn. 1991). The record supports the trial court's finding because the presentence report included the Defendant's juvenile record, and the Defendant admitted to his juvenile criminal history at the sentencing hearing. Although the Defendant argues that the trial court erred by basing "the denial largely on [the Defendant's] juvenile history," this Court has previously affirmed the use of juvenile records by trial courts in determining a defendant's sentence. *See State v. Gregory D. Douglas*, No. W2010-00472-CCA-R3-CD, 2011 WL 2899191 (Tenn. Crim. App., at Jackson, July 20, 2011); *State v. Sequna Copeland*, No. W2009-02029-CCA-R3-CD, 2010 WL 4117191 (Tenn. Crim. App, at Jackson, Oct. 20, 2010); *State v. Timothy C. Jewell, Jr.*, No. W2000-00998-CCA-R3-CD, 2001 WL 524368 (Tenn. Crim. App., at Jackson, May 15, 2001); *see also State v. Adams*, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997) (concluding that, in the trial court's decision to order consecutive sentencing, "a juvenile record of criminal conduct may properly be considered in assessing a suitable sentence after a felony conviction by an adult") (citations omitted). Further, the evidence in this case does not preponderate against the trial court's finding that the offense required a term of confinement. *See* T.C.A. § 40-35-210(b)(4) (2010). Thus, we conclude that the trial court properly denied the Defendant full probation, ordering him to serve one year in confinement and three years on probation. *See Blackhurst*, 70 S.W.3d at 97. The Defendant is not entitled to relief on this issue.

### 2. Judicial Diversion

The Defendant argues that the trial court abused its discretion when it denied the Defendant's request for judicial diversion. The State responds that the trial court properly exercised its discretionary authority in its denial of judicial diversion to the Defendant.

When a defendant is eligible for judicial diversion, a judge has the discretion to defer proceedings without entering a judgment of guilty. T.C.A. § 40-35-313(a)(1)(A) (2010).

The statute states that a trial court may grant judicial diversion in appropriate cases. *Id.* Following a grant of judicial diversion, the defendant is on probation but is not considered a convicted felon. *Id.* To be eligible for judicial diversion, a defendant must be a "qualified defendant" as defined by the Tennessee Code section governing judicial diversion:

> (B)(I) As used in this subsection (a), "qualified defendant" means a defendant who
>
> (a) Is found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;
> (b) Is not seeking deferral of further proceedings for a sexual offense, a violation of § 71-6-117 or § 71-6-119 or a Class A or Class B felony; and
> (c) Has not previously been convicted of a felony or a Class A misdemeanor.

T.C.A. § 40-35-313(a)(1)(B)(I) (2010). Eligibility does not automatically entitle the Defendant to judicial diversion. *State v. Bonestal*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000).

Once a defendant is deemed eligible for judicial diversion, the trial court must consider several factors when deciding whether to grant judicial diversion. Due to the similarities in pre-trial diversion, which is administered by the district attorney general, and judicial diversion, courts draw heavily from pre-trial diversion law and examine the same factors:

> [A court] should consider the defendant's criminal record, social history, mental and physical condition, attitude, behavior since arrest, emotional stability, current drug usage, past employment, home environment, marital stability, family responsibility, general reputation and amenability to correction, as well as the circumstances of the offense, the deterrent effect of punishment upon other criminal activity, and the likelihood that [judicial] diversion will serve the ends of justice and best interests of both the public and the defendant.

*State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997). Additionally, "a trial court should not deny judicial diversion without explaining both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration." *Id.* (citing *Bonestal*, 871 S.W.2d at 168). When a defendant challenges the denial of judicial diversion, we review the trial court's decision under an abuse of discretion standard. *Cutshaw*, 967 S.W.2d at 344. We must conclude that "no substantial evidence exists to support the ruling of the trial court" in order to grant the Defendant relief.

*Id*. Lastly, it is well settled that "[t]he same guidelines are applicable in diversion cases as are applicable in probation cases[,] but they are more stringently applied to diversion applicants." *State v. Holland*, 661 S.W.2d 91, 93 (Tenn. Crim. App. 1983).

The trial court considered the evidence presented at the sentencing hearing and stated that "it's redundant for [the trial court] to go through the factors necessary for judicial diversion because those are the same criteria that . . . would apply to determine whether to grant alternative sentencing but they're applied more strictly." The trial court did, however, expand on the criteria for judicial diversion, stating the following:

> . . . [the Defendant is] eligible for diversion[,] but in order to determine whether or not to give him diversion[,] [the trial court has] got to look at [the Defendant's] complete record. In order to determine whether he gets any form of alternative sentencing[,] including diversion[,] [the trial court has] got to consider those criteria. And just because [the Defendant] was a juvenile[,] he can't come up here and say this is the first time [he's] ever done anything wrong and [he] deserve[s] the break of this system to get diversion.
>
> . . . .
>
> . . . [the trial court is] looking at a juvenile record that includes violent offenses . . .
>
> . . .
>
> . . . But [the trial court is] basing it on measures less restrictive than confinement have been applied to [the Defendant]. . . . But when they warn him and counsel him and send him home, that's a measure less restrictive than confinement . . . when [the Defendant] gets some kind of alternative in juvenile court, that's a measure less restrictive than confinement.
>
> . . . how many measures less restrictive than confinement does he get? . . . [the Defendant has] had somewhere near eight of those in juvenile court where they've done something with him to try to rehabilitate him and then within a few months of him turning 18[,] he goes out and burglarizes somebody else.

As a result, the trial court concluded that, due to the Defendant's juvenile record and his past failures to learn from measures less restrictive then confinement, "this is a case where [the trial court] could deny any form of alternative sentencing."

8

Based upon its consideration of the Defendant's juvenile record and prior punishments less restrictive than confinement, the trial court correctly denied judicial diversion. *See Jewell*, 2001 WL 524368, at *4. The trial court properly stated its reasons for denying judicial diversion, and substantial evidence in the record supports the findings upon which the trial court based its decision. Considering the circumstances of the offense, the Defendant's amenability to correction, the deterrent value of the punishment to the Defendant and others, and the interests of the public, we conclude that the trial court did not abuse its discretion when it denied the Defendant judicial diversion. The trial court examined the factors relevant to diversion, explained why the factors for diversion were similar to those for determining alternative sentencing, and indicated diversion was not appropriate for the Defendant. The Defendant, therefore, is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the trial court properly sentenced the Defendant. As such, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE